**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

MICHAEL BOTAI and JENNIFER BOTAI, husband and wife,

Plaintiffs,

vs.

SAFECO INSURANCE COMPANY OF ILLINOIS, an Illinois corporation

Defendant.

Case No. 2:14-CV-00445-EJL-REB

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR STAY AND TO COMPEL APPRAISAL**

**(Docket No. 6)**

Currently pending before the Court is Defendant Safeco Insurance Company of Illinois's ("Safeco") Motion for Stay and to Compel Appraisal (Docket No. 6). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. BACKGROUND

Plaintiff Jennifer Botai carried a homeowners insurance policy with Safeco, effective from May 2013 through May 2014 (the "Policy"). She and her husband, Michael, made a claim upon that Policy after their home sustained water damage on December 7, 2013. Safeco arranged for multiple inspections to assess the damage between December 2013 and July 2014, in addition to examining Jennifer under oath. The parties disagreed on the appropriate reimbursement amount for the mitigation work Plaintiffs said they had already done, and also could not agree upon the expense that would be incurred for remaining repair work. Each rejected the other's contractor estimates.

At present, Safeco has paid $26,559.07 for both mitigation work and repairs. Plaintiffs contend that the total claim, based upon the lowest repair estimate combined with their mitigation invoice, totals $73,574.42.

Based upon the failure of the parties to agree on the amount of any remaining aspects of the claim, Safeco invoked an "appraisal clause" in the Policy in an August 12, 2014 letter to the Botais' counsel. *See* Ex. J to Anderson Aff. (Docket No. 6, Att. 5). The appraisal clause reads in pertinent part:

> If you and we do not agree on the amount of the loss, including the amount of actual cash value or replacement cost, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the actual cash value or replacement cost of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of the loss.

*See* Ex. A to Anderson Aff., ¶ 7., p. 16 (Docket No. 6, Att. 4).[1]

In its letter to Botai, Safeco identified its chosen appraiser in the letter and requested that Plaintiffs provide theirs. *See* Ex. J to Anderson Aff. (Docket No. 6, Att. 5). Plaintiffs responded on August 19, 2014, claiming Safeco violated the Policy by selecting an appraiser who is not "competent and disinterested" as is required in the appraisal clause.[2] *See* Ex. K to Anderson Aff.

---

[1] The Policy also contains language immediately following the appraisal clause purporting to require that "[n]o action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage." *See id.* at ¶ 8., p. 17.

[2] Plaintiffs state that an attorney who "does not work in the construction industry, is not a licensed contractor, and does not have any formal training or qualification as an appraiser does

(Docket No. 6, Att. 5). Safeco's August 26, 2014 reply did not agree with Plaintiffs' position, and Safeco renewed its request that Plaintiffs choose their own appraiser in order to proceed with the appraisal process. *See* Ex. L to Anderson Aff. (Docket No. 6, Att. 5).

Having been unable to persuade Safeco to a different course, Plaintiffs filed suit in state court on September 24, 2014, alleging breach of contract, negligence, and intentional bad faith (Docket No. 1, Att. 1). Their claims in that regard fall into two categories: (1) those directly referencing the contested reimbursement amount, and (2) ancillary bad faith claims alleging that Safeco delayed payments and inspections, and acted unreasonably throughout much of the time period involved. *Id.* Safeco removed the action to this Court (Docket No. 1) and filed an answer on November 3, 2014 (Docket No. 5).

On November 17, 2014, Safeco filed the pending Motion for Stay and to Compel Appraisal (Docket No. 6), asking the Court to stay the suit and compel Plaintiffs to complete the Policy's appraisal process. Plaintiffs responded on January 12, 2015 (Docket No. 12), alleging that Safeco's decision to select the particular appraiser that it did constituted an additional bad-faith action, and raising two objections to the Motion. First, they claim that if Safeco's Motion were granted, the Court would, in effect, be issuing a declaratory ruling that it was not bad faith for Safeco to choose an insurance defense attorney as its appraiser. *Id.* Second, Plaintiffs claim the Safeco's appraiser does not meet the contractually-specified "competent and disinterested" qualifications, and the Court should not compel them to participate in the process under these circumstances. *Id.*

---

not satisfy the ordinary meaning of "competent" (Docket No. 12). Also, the Botais contend the appraiser's position as an insurance defense attorney, specifically one who used to represent Safeco, precludes his being "disinterested." *Id.*

## II. DISCUSSION

### A. Motion to Compel Appraisal

The crux of Plaintiffs' complaint stems from the parties' inability to agree on the amount of covered losses under the Policy. Considered in isolation, this fact implicates the Policy's appraisal provision. However, Plaintiffs go on to allege that Safeco acted in corresponding bad faith. Even so, these additional allegations do not foreclose as a matter of law this Court's consideration of the Policy and its pre-litigation appraisal process. That is, for the reasons that follow, proceeding with the contractually-agreed upon appraisal process will not foreclose, nor adjudicate, Plaintiffs' bad faith claims, but the process will advance a resolution of the core reimbursement issue.

#### 1. *Appraisal vs. Arbitration*

The Court must first determine whether mandatory appraisal provisions and mandatory arbitration provisions should be treated the same, or at least similar, under Idaho law. Like many jurisdictions, Idaho does not define "arbitration" in addressing the validity of arbitration agreements. Idaho Code Ann. § 7-901 (West 2015). The common law has provided clarity in a number of jurisdictions in which appraisal provisions are treated as arbitration provisions, including Nevada, California, and Arizona. *See, e.g., Silverman v. Fireman's Fund Am. Ins. Cos.*, 604 P.2d 805 (Nev. 2013); *Kirkwood v. Cal. State Auto. Assn. Inter-Ins. Bureau*, 122 Cal. Rptr. 3d 480 (Cal. Ct. App. 2011); *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365 (Ariz. Ct. App. 2009). Other jurisdictions are in disagreement on equating appraisal with arbitration, but the following distinction provides guidance in the instant case:

> The equation of appraisal with arbitration may depend upon the wording of the policy provision more than the name ascribed to it. . . . For example, where a policy's

> appraisal procedure required two appraisers and an umpire, it was deemed to be an arbitration provision, thus allowing arbitration confirmation proceedings to be brought.

15 Steven Pitt et. al., Couch on Insurance § 209:16 (3d ed. 2014) (citing *Waradzin v. Aetna Cas. and Sur. Co.*, 570 A.2d 649 (R. I. 1990)).

**2. *Bad Faith vs. Proceeds-Based Complaint***

Idaho law allows for a common law tort action against an insurance company for bad faith, distinct from that of a proceeds-based dispute, based on the "unique, non-commercial aspect of the insurance contract." *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014 (Idaho 1986) (internal quotations omitted). Such an avenue is not unmarked, however, as the Idaho Supreme Court has also held that "an insured may not proceed with a lawsuit *for proceeds* under a policy in the face of a valid clause requiring arbitration, *without first complying* with the arbitration provision." *Inland Group of Cos., Inc. v. Providence Wash. Ins. Co.*, 985 P.2d 674 (Idaho 1999) (emphasis added).

A similar result was reached in a Ninth Circuit case applying California law, where a plaintiff-insured alleged the defendant-insurer "improperly undervalued her damaged personal property" based on a faulty calculation methodology. *Enger v. Allstate Ins. Co.*, 407 Fed.Appx. 191, 192 (9th Cir. 2010). The court affirmed the trial court's granting the defendant's motion to compel appraisal before suit could be brought for an alleged breach of the covenant of good faith, reasoning:

> By the plain language of the insurance policy, it is immaterial that Enger believes the cause of the disagreement concerning the actual cash value is Allstate's alleged use of an improper valuation method. The contract makes no exception where the source of the dispute is the valuation method used: *so long as the parties fail to agree as to the actual cash value or amount of loss*, the appraisal remedy is triggered at the request of either party.

*Id.* at 193 (emphasis added).

**3. *Analysis***

In this case, the Court must decide Safeco's Motion to Compel Appraisal in light of a complaint filed by Plaintiffs that includes *both* bad faith and proceeds-based claims. The Court finds the decision in *Palozie v. State Farm Mut. Auto. Ins. Co.*, No. 96-0021-PHX-ROS, 1996 WL 814533 (D. Ariz. Dec. 2, 1996) persuasive in such circumstances. In *Palozie*, the plaintiff-insured and defendant-insurer could not agree on the property loss to a fire-damaged vehicle. *Id.* at *1. The policy had an appraisal provision similar to that in the instant case, calling for an appraiser appointed by each side and a neutral umpire chosen by the first two. *Id.* The parties could not agree as to the chosen umpire, and the plaintiff objected to the defendant's appraiser choice, claiming he was biased. *Id.* The plaintiff raised claims similar to this case, including breach of contract, misrepresentation, and bad faith. *Id.* Despite the fact that the appraisal process could only solve the reimbursement issue, the court granted the defendant's request to enforce the appraisal clause. *Id.* at *6. The court acknowledged the risk to judicial economy if the plaintiff were to move to vacate the award due to appraiser bias. *Id.* However, when viewed in conjunction with a ruling on the motion to stay (similar to that facing this Court, see *infra* Part II.B), the Court concluded that compelling the appraisal process was likely to enhance overall judicial economy. *Id.* at *7. Because the bad faith claims were inexorably linked to the appraisal process, including the defendant's appraiser choice and disputed reimbursement amount, "the actual conduct of the appraisal and whether Plaintiff prevails in the appraisal could affect Plaintiff's bad faith claim." *Id.*

Here, as referenced earlier, Plaintiffs contend that granting Safeco's Motion is tantamount to a ruling that Safeco's appraiser choice meets the contractual "competent and

disinterested" bar and was not made in bad faith (Docket no. 12). They cite *Bainter v. United Pac. Ins. Co.*, 748 P.2d 260 (Wash. Ct. App. 1988) as support. The Court does not agree. The *Bainter* holding does not support Plaintiffs' claim that proceeding with the appraisal process would preclude a bad faith action after its completion. 748 P.2d at 262. Specifically, plaintiffs who question the propriety of the appraisal process have redress and can bring those claims even after completion of the appraisal process. *Id.* Factual issues may arise as to "allegations of bias, prejudice, or lack of disinterestedness on the part of either an appraiser or the umpire." *Id.* Proceeding with the appraisal process does not foreclose them. *Id.*

The Court also notes, as in *Palozie*, that neither party claims the appraisal clause itself is invalid, nor is there any reason on this record for the Court to conclude such. For all these reasons, the Court finds that Plaintiffs' bad faith claim against Safeco does not nullify the Policy's appraisal provision; and, accordingly, grants the Motion to Compel Appraisal. The Court is making no findings as to Safeco's choice of appraiser and neither condones nor condemns such a choice on this record, nor does this decision bar Plaintiffs from bringing an action for bad faith regarding Safeco's appraisal choice or the appraisal process as a whole. Should the parties not be able to resolve the lawsuit short of such a battle, those questions will be considered at a later time.

**B. Motion to Stay**

Although the Court makes no ruling as to whether all appraisals like the one at issue should be treated as arbitration and fall under Idaho's Uniform Arbitration Act, the facts in this case demonstrate the appraisal process is sufficiently similar to arbitration so as to look to the Idaho act for guidance. In doing so, the Court draws upon the following:

> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

§ 7-902(d). Since the Court is granting the Motion to Compel Appraisal, the Court will also stay Plaintiffs' claims focusing on monetary reimbursement. *Id.*

The Court is aware that the appraisal process is not focused upon all of Plaintiffs' claims. Nonetheless, when deciding whether to stay the non-arbitrable claims until the appraisal process is completed, the Court "has inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

The Court again finds *Palozie* persuasive on this issue. Discussing the appraisal result and its affect on ancillary bad faith claims, the court states:

> [I]f Plaintiff does not prevail, he may use that fact to bolster his contention that Defendant conducted the appraisal unfairly. On the other hand, if Plaintiff prevails, Defendant may use that fact to argue that the process was indeed fair. Additionally, the value determined by the appraisal panel may be, in part, a basis for determining whether and to what extent Plaintiff has been damaged. Hence, staying the non-arbitrable bad faith claims will prevent prejudice to either party and may well encourage the parties to settle.

*Palozie*, 1996 WL 814533, at *7. There are clear parallels between *Palozie* and this case which call for a similar result. Hence, the Court grants the Motion for Stay of all claims pending the outcome of the appraisal.

///

///

///

## III. ORDER

Based on the foregoing, it is hereby ORDERED that:

1) Defendant's Motion to Compel Appraisal is **GRANTED**. The parties shall take all necessary steps to begin the Policy's appraisal process within 30 days of the date of this Order, and complete the process within 90 days.

2) Defendant's Motion for Stay is **GRANTED** pending the outcome of the mandated appraisal process.

3) The parties shall file a joint report to the Court on the status of the appraisal process no later than **October 30, 2015.**




DATED: **July 24, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge