## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL BOTAI and JENNIFER BOTAI, husband and wife,<br><br>          Plaintiffs,<br><br>          vs.<br><br>SAFECO INSURANCE COMPANY OF ILLINOIS, an Illinois corporation<br><br>          Defendant. | Case No. 2:14-CV-00445-EJL-REB<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 25)** |

Now pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 25). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the undersigned enters the following Report and Recommendation:

### I.  GENERAL BACKGROUND

Plaintiff Jennifer Botai carried a homeowners insurance policy with Defendant Safeco Insurance Company of Illinois ("Safeco"), effective from May 2013 through May 2014 (the "Policy"). She and her husband, Plaintiff Michael Botai (collectively "Plaintiffs"), made a claim upon that Policy after their home sustained water damage on December 7, 2013. Plaintiffs are dissatisfied with the manner in which Safeco went about investigating and adjusting, and then paying upon, their claim. Their lawsuit seeks contractual and tort remedies against Safeco, related to the latter's handling of their claim under the terms of the Policy – specifically, (1) breach of contract; (2) negligence; and (3) intentional bad faith.

The case was filed originally in Idaho state court, but then removed to this Court by Safeco. Shortly thereafter, Safeco moved to stay the action and compel Plaintiffs to participate

**REPORT AND RECOMMENDATION - 1**

in the Policy's prescribed appraisal process to address and resolve the disputed value of the

outstanding amount of Plaintiffs' claimed loss.[1]  The Policy's appraisal clause reads:

> 7.     **Appraisal.**  If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost*, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located.  The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value or replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.
>
> Each party will:
>
> a.     pay its own appraiser; and
>
> b.     bear the other expenses of the appraisal and umpire equally.
>
> 8.     **Suit Against Us.**  No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

Policy at pp. 12-13, attached as Ex. A to Anderson Decl. (Docket No. 25, Att. 2) (emphasis in

original).

The undersigned granted Safeco's Motion on July 24, 2015, ordering that "[t]he parties

shall take all necessary steps to begin the Policy's appraisal process within 30 days of the date of

this Order, and complete the process within 90 days."  *See* 7/24/15 MDO (Docket No. 16).

In ordering the parties to comply with the Policy's appraisal process (and also staying the

action, pending the outcome of the ordered appraisal), the Court addressed the potential effect of

---

[1]  Up to that point in time, Safeco made approximately $22,454.15 in (two) payments to Plaintiffs; however, Plaintiffs believed the total value of the claimed loss exceeded $65,000.

**REPORT AND RECOMMENDATION - 2**

the parties' participation in the appraisal process on Plaintiffs' asserted claims against Safeco –

in particular, whether (or to what extent) the appraisal process resolved all of Plaintiffs' claims

against Safeco (including bad faith) or just the proceeds-based claim (breach of contract).[2]  On

this point, the Court stated:

> Idaho law allows for a common law tort action against an insurance company for bad
> faith, distinct from that of a proceeds-based dispute, based on the unique, non-
> commercial aspect of the insurance contract.  Such an avenue is not unmarked,
> however, as the Idaho Supreme Court has also held that "an insured may not proceed
> with a lawsuit *for proceeds* under a policy in the face of a valid clause requiring
> arbitration, *without first complying* with the arbitration provision.[3]
>
> . . . .
>
> [Case law] does not support Plaintiffs' claim that proceeding with the appraisal
> process would preclude a bad faith action after its completion.  Specifically,
> Plaintiffs, who question the propriety of the appraisal process have redress and can
> bring those claims even after completion of the appraisal process.  Factual issues
> may arise as to allegations of bias, prejudice, or lack of disinterestedness on the part
> of either an appraiser or the umpire.
>
> . . . .
>
> [T]he Court finds that Plaintiffs' bad faith claim against Safeco does not nullify the
> Policy's appraisal provision; and, accordingly, grants the Motion to Compel
> Appraisal.  The Court is making no findings as to Safeco's choice of appraiser and
> neither condones nor condemns such a choice on this record, nor does this decision
> bar Plaintiffs from bringing an action for bad faith regarding Safeco's appraisal
> choice or the appraisal process as a whole.  Should the parties not be able to resolve
> the lawsuit short of such a battle, those questions will be considered at a later time.
>
> . . . .
>
> The Court is aware that the appraisal process is not focused upon all of Plaintiffs'
> claims.  Nonetheless, when deciding whether to stay the non-[appraisable] claims

---

[2]  At oral argument on the pending Motion for Summary Judgment, Plaintiffs' counsel
stated that Plaintiffs' negligence claim was subsumed within the bad faith claim.

[3]  Earlier in the Memorandum Decision and Order, the Court determined that the Policy's
appraisal clause should be treated similarly to an arbitration clause.  *See* 7/24/15 MDO, pp. 4-5
(Docket No. 16).

**REPORT AND RECOMMENDATION - 3**

> until the appraisal process is completed, the Court has the inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants.

*Id*. at pp. 5, 7-8 (emphasis in original, internal quotation marks and citations omitted).  In other words, the appraisal process addressed only Plaintiffs' breach of contract claim against Safeco, not their bad faith claim.  Finally, to monitor the action's progress and ensure its continued momentum, the Court ordered the parties to file a "joint report . . . on the status of the appraisal process no later than October 30, 2015."  *Id*. at p. 9.

On October 20, 2015, the parties stipulated to extend the date to complete the appraisal process from October 22, 2015 to November 23, 2015 (and, likewise, any deadline to submit an update to the Court).  *See* Stip., p. 2 (Docket No. 17) ("[G]iven the busy schedules of the two appraisers and the number of issues to be determined on appraisal, it is anticipated that the appraisal process will extend beyond the October 22, 2015 deadline.  The parties agree that the appraisal process should be able to be completed by November 23, 2015 . . . .  The parties also anticipate providing a status report to the Court regarding the outcome of the appraisal process by December 1, 2015.").  The Court adopted the parties' stipulation the next day.  *See* 10/21/15 DEO, p. 1 (Docket No. 17) ("The deadline to complete the appraisal process shall be extended. **The parties shall complete the appraisal process by November 23, 2015.  The parties shall provide a joint status report to the Court regarding the outcome of the appraisal process and the overall status of this action by December 1, 2015**.") (emphasis in original).

On December 9, 2015, the parties filed a Joint Report RE: Status of Appraisal.  *See* Joint Rpt. (Docket No. 21).  Therein, the parties indicated:

1.      The parties both retained and identified separate individuals to provide services as "appraisers" in this matter.  These individuals jointly selected a neutral umpire.

**REPORT AND RECOMMENDATION - 4**

2.      The parties provided documents and information to all the identified individuals to conduct an analysis of the scope of damage to the Botais' home as a result of the December 7, 2013, water loss.

3.      The appraisal process concluded on November 24, 2015, with both individuals reaching agreement regarding the scope of the loss, making it unnecessary to utilize the services of the neutral umpire.

4.      The valuation of the loss was $40,727.88.

*Id*. at 2.

Following the appraisal, Safeco made an additional payment of $18,273.73 to Plaintiffs (for a total payment of $40,727.88). *See* Mem. in Supp. of MSJ, p. 14 (Docket No. 25, Att. 1). On May 17, 2016, Safeco filed the pending Motion for Summary Judgment, arguing that it neither breached the Policy when investigating and processing Plaintiffs' claim, nor committed bad faith in the handling of the same. *See id*. at pp. 14-21.

## II.  REPORT

### A.      Summary Judgment: The Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."

**REPORT AND RECOMMENDATION - 5**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id*. at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor.  *See Devereaux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324.

**B.      Safeco's $40,727.88 Total Payment Under the Policy Precludes Plaintiffs' Breach of Contract Claim as a Matter of Law, But Not Plaintiffs' Bad Faith Claim**

Examination of the allegations supporting Plaintiffs' breach of contract and bad faith claims, reveals the originally synergistic relationship between the two causes of action – that is, when Plaintiffs first filed their Complaint in state court, their allegations surrounding their

**REPORT AND RECOMMENDATION - 6**

dispute with Safeco supported both claims.  For example, on their breach of contract claim,

Plaintiffs allege:

> 29.  Safeco breached its contract by failing to pay the amounts due under the Botais' Policy necessary to cover the repairs to the Botais' home. The Policy clearly covered the losses incurred.
>
> 30.  Safeco's failure to timely respond to the Botais' claims was in violation of the terms of the Policy.
>
> 31.  Safeco's failure to conduct a reasonable investigation of the Botais' claims was in violation of the terms of the Policy.
>
> 32.  By its conduct, Safeco breached the implied covenant of good faith and fair dealing.
>
> 33.  As a direct and proximate result of Safeco's breaches, the Botais have incurred damages, including consequential and incidental damages, in such amount as will be proven at the time of trial.  The Botais have incurred and will incur additional attorney fees and costs in order to seek coverage under the insurance contract as a result of Safeco's beach.  Safeco is liable for all such damages suffered by the Botais.

Compl., ¶¶ 29-33 (Docket No. 1, Att. 1).  Similarly, on their bad faith claim, Plaintiffs allege:

> 38.  Safeco had a duty to act in good faith in its dealing with its insured.  Safeco breached its duty of good faith by intentionally, wantonly, unreasonably, and in bad faith denying the Botais' claim for coverage.
>
> 39.  Safeco's wrongful denial of the Botais' claim was not a result of a good faith mistake, and the resulting harm to the Botais is not fully compensable by contract damages.
>
> 40.  Safeco acted in bad faith, and intentionally and unreasonably in its dealings with the Botais and placed its interest ahead of the Botais by failing to provide policy benefits in accordance with the terms and conditions of the Policy.
>
> 41.  The above-described bad faith acts are in direct breach of Safeco's common-law duty to act in good faith with respect to its insured and are not exhaustive.  The Botais, on information and belief, allege that there may be other instances of intentional bad faith by Safeco.

**REPORT AND RECOMMENDATION - 7**

42.     As a direct and proximate result of Safeco's bad faith acts, the Botais have suffered damages in an amount to be proven at trial, including, but not limited to, their attorney fees and costs.

*Id*. at ¶¶ 38-42.

After those allegations were raised in the Complaint, a critical event took place – Safeco paid in full the balance of the appraisers' agreed-upon loss, following the parties' participation in the Policy's appraisal process. *See* Joint Rpt. (Docket No. 21). Under the terms of the Policy, the appraisal process was an agreed method of seeking resolution of disputes over the amount of those losses covered under Section I ("Property Coverages") of the Policy. *See* Policy at pp. 12-13, attached as Ex. A to Anderson Decl. (Docket No. 25, Att. 2). Once determined (that is, once agreed upon as a product of the appraisal process), Safeco is contractually required to pay such an amount under the Policy.

Hence, after Safeco fully paid the appraised amount of the loss (by virtue of its third payment of $18,273.73), nothing more is owed under the express terms of the Policy. As such, there is no longer a basis to support Plaintiffs' breach of contract claim, and, thus, Safeco's Motion for Summary Judgment should be granted in this limited respect.

Plaintiffs' claims, however, extend beyond Safeco's obligation to pay under the Policy, as they are also premised upon Safeco's allegedly wrongful conduct throughout the settlement process itself. Idaho recognizes a tort action, *distinct from an action on the contract*, for an insurer's bad faith in settling the first party claims of its insured. Insurers have a common law duty to their insureds to settle first party claims in good faith. A breach of that duty will give rise to an action in tort. The imposition of liability in tort for bad faith breach of an insurance contract is based upon the special relationship that exists between the insurer and the insured.

**REPORT AND RECOMMENDATION - 8**

*See Cummings v. Stephens*, 336 P.3d 281, 292 (Idaho 2014) ("This Court has created a tort of

bad faith applicable to insurance companies.  That tort is not a tortious breach of contract, but a

breach of a duty imposed as a consequence of a contractual relationship."); *see also Inland*

*Group of Companies, Inc. v. Providence Washington Ins. Co.*, 985 P.2d 674, 680 (Idaho 1999)

("The duty to act in good faith exists at all times during the settlement process.  Furthermore, a

claim for breach of the obligation of good faith and fair dealing is independent of a technical

breach of the obligation to pay.").  This principle was described many years ago in *White v.*

*Unigard Mut. Inc. Co.*, 730 P.2d, 1014 (Idaho 1986), in which the Idaho Supreme Court said:

> For example, an insured who takes out a second mortgage on her business property after purchasing her policy, and who could not make her combined payments when the insurer delayed settlement, would recover at tort, but not at contract.  To deny an action in tort would deny such recovery and consequently encourage insurers to delay settlement.  In contrast, an action in tort will provide necessary compensation for insureds and incentive for insurers to settle valid claims. . . . .  Thus, where an insurer 'intentionally and unreasonably denies or delays payment' on a claim, and in the process harms the claimant in such a way not fully compensable at contract, the claimant can bring an action in tort to recover for the harm done.

*Id.* at 1018.

To recover against an insurance company on the tort of bad faith, the insured must show:

(1) the insurer intentionally and unreasonably denied or delayed payment; (2) the insured's claim

was not fairly debatable; (3) the insurer's denial or delay was not the result of good faith

mistake; and (3) the resulting harm was not fully compensable by contract damages.  *See Lovey*

*v. Regence BlueShield of Idaho*, 72 P.3d 877, 888 (Idaho 2003).  Part and parcel with Plaintiffs'

original position that Safeco acted in bad faith by denying their claim for coverage, their

argument has since pivoted to focus largely on Safeco's alleged delay in investigating and

processing the claim.  Safeco disagrees.

**REPORT AND RECOMMENDATION - 9**

To begin, Safeco argues that Plaintiffs "cannot establish a viable tort action in this matter without first establishing that a breach of a contractual duty occurred."  Mem. in Supp. of MSJ, p. 20 (Docket No. 25, Att. 1) (citing *Robinson v. State Farm Mut. Auto Ins. Co.*, 45 P.3d 829 (Idaho 2002)).  To the extent Safeco is suggesting that, having already made payment on the claim following the appraisal process there can be no breach of contract to anchor Plaintiffs' bad faith claim, the undersigned disagrees.  An implied duty of good faith and fair dealing "exists between insurers and insureds in every insurance policy."  *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 395 (Idaho 2010).  The covenant requires that "the parties perform in good faith the obligations imposed by their agreement," and a violation of the covenant occurs only when "either party . . . violates, nullifies, or significantly impairs any benefit" of the contract.  *Idaho First Nat. Bank v. Bliss Valley Foods*, 824 P.2d 841, 863 (Idaho 1991).  It is this same duty that Plaintiffs may (and do) rely upon in support of their bad faith claim – independent of the fact that Safeco has now "made good" on its obligation to account for Plaintiffs' covered claims.  *See, e.g.*, *White*, 730 P.2d at 1020 ("The tort of bad faith breach of insurance contract, then, has its foundations in the common law covenant of good faith and fair dealing and is founded upon the unique relationship of the insurer and the insured, the adhesionary nature of the insurance contract including the potential for overreaching on the part of the insurer, and the unique, 'non-commercial' aspect of the insurance contract.").[4]

---

[4]  Moreover, while it may be true that Idaho courts have held that a duty under a contract must be breached to find bad faith, the undersigned reads those cases as considering whether coverage existed in the first instance, understandably finding that, without coverage, there can be no breach of an insurance policy and, correspondingly, no bad faith.  *See, e.g.*, *Parks v. Safeco Ins. Co.*, 376 P.3d 760, 765-66 (Idaho 2016) (holding that Safeco did not breach insurance policy by paying actual cash value and withholding further payment until plaintiffs had incurred an expense to replace their house; "therefore, Safeco did not commit bad faith."); *Rizzo v. State*

**REPORT AND RECOMMENDATION - 10**

More substantively, Safeco contends that its initial response to Plaintiffs' notice of loss, subsequent investigation, and ultimate processing of their claim to final payment, took place in a timely fashion and was at all times consistent with the terms of the Policy and industry norms. *See generally* Mem. in Supp. of MSJ, pp. 16-21 (Docket No. 25, Att. 1). In fact, according to Safeco, any delays in making payments on the claim were the result of Plaintiffs'[5] (not Safeco's) lack of cooperation. *See id.* at pp. 18-21 ("[T]o the extent there was any delay in payment, any

---

*Farm Ins. Co.*, 305 P.3d 519, 528 (Idaho 2013) ("In order to prove his bad faith claim, Rizzo 'must establish that [he] was entitled to recover under the [Policy].' Because we affirm the district court's dismissal of Rizzo's breach of contract claims, we also affirm the dismissal of Rizzo's bad faith claim.") (quoting *Lovey*, 72 P.3d at 888); *Dave's Inc. v. Linford*, 291 P.3d 427, 436 (Idaho 2012) ("As explained above, the insurance policy did not require that State Farm provide a defense to the contractor's lawsuit or indemnify the Linfords from any judgment that the contractor may recover against them. The Linfords also argued that the insurance policy required State Farm to reimburse them for 'all costs they 'actually and necessarily' spend to repair the Home, which State Farm has not done,' which, as explained above, was based upon their clearly erroneous construction of the insurance policy."); *Robinson*, 45 P.3d at 835 ("The district court erred in not instructing the jury that proof of coverage was an element of Robinson's bad faith claim."). These cases are therefore distinguishable in that, here, there *is* coverage, to be considered hand-in-hand with Safeco's implied duty of good faith and fair dealing when processing those covered claims. To hold otherwise would permit an insurer to continuously delay the payment of a covered claim to an insured and, once making payment on that claim (albeit belatedly), cause any breach of contract claim to immediately evaporate, along with any concurrent bad faith claim.

[5] In this respect, Safeco argues that Plaintiff Michael Botai had the same obligations under the Policy as Plaintiff Jennifer Botai. *See* Mem. in Supp. of MSJ, p. 16 (Docket No. 25, Att. 1). The undersigned agrees, recognizing that (1) Mr. Botai – as a named Plaintiff – is asserting breach of contract and bad faith claims against Safeco, based upon alleged duties owed to him under the Policy; and (2) Mr. Botai is an insured under the Policy. *See* Policy at p. 23, attached as Ex. A to Anderson Decl. (Docket No. 25, Att. 2) ("Throughout this policy, 'you' and 'your' refer to: (a) the 'named insured' shown in your Policy Declarations; and if a resident of the same household: (b) the spouse; (c) the civil partner by civil union licensed and certified by the state; or (d) the domestic partner."). Mr. Botai is married to Mrs. Botai. *See* Compl., ¶ 5 (Docket No. 1, Att. 1) ("Jennifer Botai . . . purchased a homeowners insurance policy from Defendant Safeco, Policy No. OM2305614 . . ., to provide insurance coverage for her home located at 4333 W. Lennox Loop, Coeur d'Alene, Idaho 83815. Jennifer Botai shares the home with her husband, Michael Botai.").

**REPORT AND RECOMMENDATION - 11**

such delays were clearly and unquestionably caused by the Botais' failure to cooperate with the investigation of the loss. . . . Additionally, had the Botais not disposed of the evidence that was critical for determining whether a covered loss had occurred, payment would have been made much sooner. . . .  Had the Botais been more cooperative and responded to Safeco's requests for a proof of loss and supporting documents/information, the claim could have been resolved far more quickly.").  Plaintiffs dispute this, however, countering that:

- Safeco's initial inspection was incomplete, with all materials associated with the loss available for Safeco's review;

- Safeco harassed Plaintiffs with unwarranted accusations of misconduct and document requests for irrelevant and unnecessary personal information;

- Safeco never secured an actual bid from a contractor for repairing the damage until June 2014, six months after the claimed loss; and

- Safeco failed to make *any* payment on the claim until March 2014 in the amount of $15,855.63, which included the $10,750.71 repair estimate from Compass Construction in January 2014, and the $6,104.92 water mitigation estimate from Comsearch, Inc. in December 2013 (minus the $1,000.00 deductible).

*See generally* Opp. to MSJ, pp. 3-8, 11-12 (Docket No. 29).[6]

These conflicting accounts necessarily speak to the elements undergirding Plaintiffs' bad faith claim – in particular, whether Safeco intentionally and unreasonably denied payment (to include the allegation by Plaintiffs that Safeco rigged the appraisal process by not naming a

---

[6] Apart from the particulars surrounding Safeco's claim investigation and processing, Plaintiffs also take issue with its participation in the Policy's appraisal process – namely, its choice of an insurance defense lawyer who regularly represents Safeco as its "competent and disinterested appraiser."  *See* Opp. to MSJ, p. 6 (Docket No. 29).

**REPORT AND RECOMMENDATION - 12**

"disinterested" appraiser as the Policy requires) and whether Plaintiffs' claim was not fairly

debatable (along with the remaining elements that may/may not fall in line pending resolution of

the first two inquiries). At the summary judgment stage, such a dispute cannot be resolved.

While it is undisputed that Safeco had a duty to act in good faith when processing and adjusting

Plaintiffs' claim pursuant to the Policy, whether it breached that duty involves unresolved

questions of fact. It is certainly possible that Safeco's understanding of those facts is correct and

that Plaintiffs' bad faith claim is more smoke than fire. However, viewing the facts (and all

reasonable inferences to be drawn from such facts) most favorably to Plaintiffs in these regards

(as the Court is required to do at this stage of the litigation), it could be said that Safeco breached

such a duty and did so in bad faith. In short, these factual questions prevent the entry of

summary judgment on Plaintiffs' bad faith claim. Accordingly, Safeco's Motion for Summary

Judgment should be denied in this limited respect.

### III.  RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's Motion for

Summary Judgment (Docket No. 25) be GRANTED, in part, and DENIED, in part, as follows:

1.  Plaintiffs' breach of contract claim be dismissed and, in this respect, Defendant's

Motion for Summary Judgment on the breach of contract be GRANTED; and

2.  Plaintiffs' intentional bad faith claim not be dismissed and, in this respect,

Defendant's Motion for Summary Judgment be DENIED.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a

Magistrate Judge's recommended disposition "must serve and file specific, written objections,

not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district

**REPORT AND RECOMMENDATION - 13**

judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."



DATED:  **March 22, 2017**

_____

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 14**